UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-23195-CIV-MARRA

In re:

SAGAMORE PARTNERS, LTD,

    Debtor.
_____/

**ORDER DENYING MOTION FOR LEAVE TO APPEAL**

This cause is before the Court upon Debtor Sagamore Partners, LTD's Motion for Leave to Appeal from Interlocutory Order (DE 1). In that motion, Sagamore requests that this Court permit an interlocutory appeal of the bankruptcy court's Order sustaining the objection of JPMCC 20060LDP7 Miami Beach Lodging, LLC to a disclosure statement that Sagamore filed in connection with its reorganization plan. The Court has carefully considered the motion, and the response of Miami Beach Lodging (DE 2, Attach. 2), and is otherwise fully advised in the premises.

**I. Factual Background and Procedural History**

The Court sets out the introductory facts as recited by the bankruptcy court:

The pertinent facts appear to be undisputed. The Debtor is the owner and operator of the Sagamore Hotel on Miami Beach (the "Property"). The Debtor entered into the Loan, in the principal amount of $31,500,000 (the "Loan Amount"), on or about March 24, 2006. The Loan is secured, inter alia, by a first priority mortgage on the Property. Pursuant to the Loan Documents, the Debtor was obligated to make interest only payments on a monthly basis until the maturity date of the Loan, April 11, 2016 (the "Maturity Date"), at which time all amounts remaining unpaid, including principal and interest, would become due and payable. Pursuant to the Loan Documents, interest on the Loan is calculated at the rate of 6.54% per annum (the "Interest Rate"). Moreover, the Loan Documents provide that so long as an event of default exists in respect of the Loan, interest shall accrue on the unpaid Loan Amount at the rate of 5% above the Interest Rate (the "Default Rate").

The Debtor acknowledges that it failed to make monthly interest payments in respect

of the Loan commencing with the payment due August 11, 2009 (the "Payment Default Date "), until after the commencement of the Debtor's bankruptcy on October 6, 2011 (the "Petition Date ") when it undertook to make adequate protection payments as a condition of its use of the Secured Lender's cash collateral. Therefore, . . . pursuant to the Loan Documents, the Default Rate became applicable from the Payment Default Date. According to the Disclosure Statement, by letter dated September 28, 2009, LNR, on behalf of the Secured Lender, declared the Loan in default, and demanded payment in full of all of the indebtedness due under the Loan.

On December 7, 2009, the Secured Lender commenced a mortgage foreclosure proceeding in state court to enforce its rights pursuant to the Loan Documents (the "State Court Foreclosure "). Apparently, the State Court Foreclosure was hotly contested and actively litigated for more than two years until the Debtor sought chapter 11 relief on the Petition Date, two weeks before a summary judgment hearing was scheduled to occur and one month before the matter had been set for trial.

Also in December 2009 (some three months after the Debtor's payment default), pursuant to the Loan Documents, a "lock box" arrangement was activated pursuant to which all hotel revenues were directed to an account from which the costs and expenses of operating the hotel were advanced to the Debtor and any surplus was retained by the Secured Lender as cash collateral for the Loan. Pursuant to the Loan Documents, the Secured Lender was free to apply the funds on deposit in the "lock box" in such order and priority as it determined.

According to the Secured Lender, it was owed approximately $41 million as of the Petition Date, inclusive of approximately $4.7 million of interest calculated at the Interest Rate and approximately $3.5 million of default interest calculated at the Default Rate. At the Petition Date, there was some $3 million in the "lock box" which the Debtor concedes would not have been sufficient in any event to satisfy interest due the Secured Lender at the Interest Rate, let alone attorneys' fees, costs, expenses or interest at the Default Rate due the Secured Lender. In other words, even if the Secured Lender had applied the funds remitted to the "lock box" to the payment obligations of the Debtor as they came due, there would not have been sufficient funds to pay Interest Rate based payments due from August 2009 until the Petition Date and therefore, there would have nonetheless been a continuing monetary default under the Loan through the Petition Date. Moreover, the Secured Lender's determination not to apply the funds in the "lock box" had no effect on the amount of default interest charged to the Debtor since, as aforesaid, that is determined by applying the Default Rate to the Loan Amount which is the principal balance of the Loan. Given that the amount of funds in the "lock box" would have been insufficient to pay the contract interest, even if the Secured Lender had applied those funds it would not have reduced the Loan Amount.

> According to the Disclosure Statement and the Debtor's Schedules, the Debtor posits that the Property has a value of $57.5 million. Thus, there is no question that the Secured Lender is oversecured.
>
> The Debtor's Schedules reflect liabilities to other creditors of approximately $20 million. The Schedules also reflect that, at the Petition Date, the Debtor had some $13.6 million of assets, exclusive of the Property but inclusive of funds in the "lock box." Thus, it appears undisputed that the Debtor is solvent. Under the Plan, the Debtor proposes to pay all non-insider claims in full with interest at the Interest Rate regardless of the outcome of this dispute over the Debtor's obligation to pay Default Rate based interest to cure the Loan. Moreover, the Plan would permit the Debtor to pay insider claims so long as there is no post-confirmation default in respect of the Secured Lender's reinstated Loan.
>
> By the Plan, the Debtor proposes to (a) reinstate the Maturity Date of the Loan, with interest from the Effective Date of the Plan at the Interest Rate and (b) to cure monetary defaults under the Loan by paying the Secured Lender unpaid interest which has accrued on the Loan at the Interest Rate, *but not interest which has accrued on the Loan at the Default Rate*. The Plan purports to leave "unaltered the legal, equitable and contractual rights respecting the Loan" notwithstanding the fact that the Debtor does not intend to pay the Secured Lender's contractual right to default interest. According to the Plan, the foregoing treatment renders the Secured Lender's claim unimpaired and thus, the Secured Lender is precluded from voting on the Plan and deemed to have accepted the Plan.

*In re Sagamore Partners, Ltd.*, 11-37867-BKC-AJC, 2012 WL 2856104, at *1–*3 (Bankr. S.D. Fla. July 10, 2012) (emphasis added) (footnotes omitted).

The secured lender objected to Sagamore's reorganization plan on the ground that Sagamore should have to pay the contractually agreed upon default interest to satisfy the Bankruptcy Code's requirements that all pre and post petition defaults be cured to unimpair the holder of a claim. In a thoroughly reasoned opinion, the bankruptcy judge sustained the secured lender's objection and found (a) that § 1123(a)(5)(G) of the Bankruptcy Code "governs the permissible contours of a plan of reorganization and serves as the authority for curing or waiving a default; (b) that the amount necessary to effect such a cure is determined in accordance with section 1123(d) which reverts to the

underlying agreements between the parties and applicable nonbankruptcy law; and, (c) that section 1124(2) governs whether a secured creditor's claim can be treated as unimpaired but does not supplant section 1123(d)." *In re Sagamore Partners, Ltd.*, 2012 WL 2856104, at *4.[1] Thus, the bankruptcy court concluded that Sagamore's reorganization plan was unconfirmable because it failed to "provide for the payment of default interest due to the Secured Lender as an element of the proposed cure of the Loan." *Id.* at *5.

After the bankruptcy's decision to sustain the secured lender's objection, Sagamore filed its amended plan of reorganization and amended disclosure statement. Collectively, these amendments provided that Sagamore would pay all additional funds required to reinstate its indebtedness as determined by the Court. In other words, Sagamore filed a plan that would cure its default and render the secured lender unimpaired.

In moving for leave to appeal, Sagamore raises four issues relating to its contention that the payment of default interest is not necessary to render the secured lender unimpaired.

---

[1] Sections 1123(a)(5)(G) and 1123(d) of the Bankruptcy Code provide, in pertinent part, that "[n]otwithstanding any otherwise applicable nonbankruptcy law, a plan shall provide adequate means for the plan's implementation, such as curing or waiving any default," 11 U.S.C. § 1123(a)(5)(G), and "[n]otwithstanding subsection (a), . . . if it is proposed in a plan to cure a default the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law," 11 U.S.C. § 1123(d). Section 1124(2) provides that "a class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan (1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest; or (2) notwithstanding any contractual provisions or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default (A) cures any such default that occurred before or after the commencement of the case under this title . . . .; (B) reinstates the maturity of such claim or interest as such maturity existed before such default; (C) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; (D) if such claim or such interest arises from any failure to perform a nonmonetary obligation, . . . compensates the holder of such claim or such interest (other than the debtor or an insider) for any actual pecuniary loss incurred by such holder as a result of such failure; and (E) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest." 11 U.S.C. § 1124(2).

## II.  Legal Standard

There is no dispute that the appeal in this matter is of a non-final order entered by the bankruptcy judge. District courts are authorized to grant leave to hear appeals of interlocutory orders entered by a bankruptcy judge pursuant to 28 U.S.C. § 158(a).  However, that provision does not provide the district courts with any criteria for determining how to exercise their discretionary authority to grant  leave to appeal.  Therefore, a district court instead must turn to 28 U.S.C. § 1292(b) which governs discretionary interlocutory appeals from district courts to the courts of appeals. *See In re Charter Co.*, 778 F.2d 617, 620 n.5 (11th Cir. 1985).  In order to grant interlocutory review under 28 U.S.C. § 1292(b), a party must demonstrate that (1) the order presents a controlling question of law (2) over which there is a substantial ground for difference of opinion among courts, and (3) the immediate resolution of the issue would materially advance the ultimate termination of the litigation.  *See McFarlin v. Conseco Svcs., LLC*, 381 F.3d 1251, 1255 (11th Cir. 2004).

Even applying these factors, the moving party still has "the burden of persuading the court that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of final judgment. The appellate court may deny the appeal for any reason, including docket congestion." *Coopers & Lyband v. Livesay*, 437 U.S. 463, 475 (1978) (citation omitted).  "Moreover, district courts should allow interlocutory bankruptcy appeals sparingly since interlocutory bankruptcy appeals should be the exception, not the rule." *In re Hinners*, 12-80924-MC-MARRA, 2012 WL 4049967, at *1 (S.D. Fla. Sept. 13, 2012) (citing *U.S. Tr. v. PHM Credit Corp.*, 99 B.R. 762, 767 (E.D. Mich. 1989)). Put another way, "[r]outine resort to [section] 1292(b) requests would hardly comport with Congress' design to reserve interlocutory

review for exceptional cases while generally retaining for the federal courts a firm final judgment rule." *Caterpiller Inc. v. Lewis*, 519 U.S. 61, 74 (1996) (internal quotation marks omitted).

### III. Analysis

With these principles in mind, the Court exercises its discretion to deny Sagamore's motion for leave to appeal. An interlocutory appeal will not materially advance the ultimate termination of this case because Sagamore filed an amended reorganization plan and disclosure statement that rendered the secured lender unimpaired. Therefore, after entry of a final appealable order, Sagamore can challenge the Bankruptcy Court's ruling that it must pay default interest to render the secured lender unimpaired.

### IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Debtor Sagamore Partners, LTD's Motion for Leave to Appeal from Interlocutory Order (DE 1) is **DENIED.** The Clerk shall **CLOSE** this case.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 6th day of March, 2013.

KENNETH A. MARRA
United States District Judge